UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

GASPER MARCIANTE,

                            Petitioner,        17-CV-2945 (SJ)

        v.                                  10-CR-46 (SJ)

UNITED STATES OF AMERICA,        **MEMORANDUM**

                                    **AND ORDER**

                            Respondent.

-------------------------------------------------------------------x

APPEARANCES:

GASPER MARCIANTE
No. 25193-077
FCI Schuylkill
P.O. Box 759
Minersville, Pennsylvania 17954
Petitioner *Pro Se*

JODI MORALES
888 Grand Concourse, Ste. 1h
Bronx, New York 10451
*Attorney for Gasper Marciante*

BREON PEACE
United States Attorney for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
By:    Andrey Spektor
*Attorney for United States of America*

**JOHNSON**, Senior District Judge:

       In 2011, petitioner Gasper Marciante pleaded guilty to conspiring to

commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and was

sentenced to 188 months' imprisonment and 5 years' supervised release. Approximately six years later, Marciante filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Motion"), alleging that his trial counsel provided ineffective assistance of counsel when he failed to file a notice of appeal on Marciante's behalf. After the Government responded to the Motion by arguing that it was untimely, Marciante retained counsel who moved to amend the Motion to raise another time-barred claim. For the reasons stated below, the Motion and the motion to amend are both denied.

## BACKGROUND

In 2010, Marciante and a co-defendant, Stefano Scalisi, were indicted in connection with an October 21, 2008, attempt to rob a Staten Island couple of narcotics, diamonds, and money. The indictment contained four counts. Counts One and Two charged the men with conspiring to commit a Hobbs Act robbery and with attempting to commit that robbery, respectively. The third count charged both men with violating 18 U.S.C. § 924(c)(1)(A) by possessing, carrying, and using a firearm during and in relation to the crimes of violence charged in Counts One and Two. The fourth count charged Marciante with being an armed career criminal in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1)—a

2

charge punishable by a minimum of 15 years and a maximum of life imprisonment. While that count alleged that Marciante had been convicted of three prior violent felonies, it did not identify the felonies.

On January 18, 2011, Marciante pleaded guilty to the conspiracy count in satisfaction of the indictment. He entered into a written Plea Agreement, then consented to enter his plea before Chief Magistrate Judge Steven M. Gold. At all times, he was represented by Richard A. Rehbock, a retained counsel with whom he professed to be "very happy." (Plea Transcript (Doc. 64) at 10.)

At the plea proceedings, Judge Gold highlighted some terms of the Plea Agreement. As relevant here, Judge Gold noted that the prosecution had estimated that Marciante's sentencing guidelines range would be 151 to 188 months, but that the actual range would be determined by the Court upon receipt of the pre-sentence report. (*Id.* at 20–21.) Judge Gold then described the waiver of appeal provisions of the Plea Agreement in some detail, stating:

> If you receive a prison sentence of 210 months or less, you will have no right to take any appeal from any aspect of this case. Even if your prison sentence exceeds 210 months in length, you will not be permitted to withdraw your guilty plea or challenge your conviction on that basis. The only right you would have if you received a sentence longer than 210 months

3

would be the right to challenge the length of the sentence
Judge Johnson imposed.  Do you understand that?

(*Id.* at 22.)  Marciante responded in the affirmative.  (*Id.*)

On July 21, 2011, Marciante was sentenced to 188 months'
imprisonment.  According to Marciante, he nonetheless directed his
attorney to file a notice of appeal, believing his sentencing guidelines range
had been calculated incorrectly.  Specifically, Marciante believed that
because he was merely the get-away driver and did not know that a firearm
would be used in the robbery, his base offense level should not have been
increased for use of a firearm or for the injuries sustained by the victims
resulting from that use.  (*See* U.S.S.G. § 2B3.1(b)(1)(B) & (b)(3)(C).)  His
attorney never the filed a notice of appeal.

Marciante's *Pro Se* Motion

On May 7, 2017, Marciante filed the instant Motion, seeking to
vacate his sentence on the ground that his attorney provided ineffective
assistance of counsel when he failed to file the notice of appeal.  In support
of the Motion, Marciante submitted an unsworn brief and a two-page
affidavit.  The affidavit does not contain any facts relating to Marciante's
role in the attempted robbery.  Rather, it largely relates to the question of
whether this motion was timely filed.

4

In his affidavit, Marciante states that he was advised by the Court at the time of sentencing that he had a right to file an appeal. (Marciante Aff. (Doc. No. 115 at pp. 9–10) at ¶ 3.)  That same day, he instructed his attorney to file a notice of appeal.  (*Id.*)  He apparently did not hear from his attorney thereafter.  However, he was informed by his fellow inmates that "it takes years for a federal appeal to be ruled on."  (*Id.* at ¶ 4.)

Eventually, Marciante called Rehbock's office "several times."  (*Id.*) Marciante was never able to speak with his attorney but was advised by Rehbock's staff that "if a ruling came down [he] would receive it in the mail."  (*Id.*)  The affidavit does not state precisely when Marciante called Rehbock's office, but it states that he had been checking the mail for "several years" as of February 2017.  (*Id.* at ¶ 5.)

In February 2017, Marciante's family informed him that Rehbock had retired.  (*Id.*)  At that point, Marciante suspected that Rehbock had never filed the notice of appeal.  (*Id.*)  However, the affidavit does not state that Marciante ever contacted anyone to confirm that suspicion.  Rather, the affidavit simply states:  "I do not believe that Mr. Rehbock filed an appeal in my case."  (*Id.*)

Marciante's brief addresses the timeliness of the Motion before it addresses the merits.  The brief acknowledges that § 2255 contains a one-

5

year period of limitation.  However, citing to 28 U.S.C. § 2255(f)(4),

Marciante argues that the Motion is timely because the one-year period did

not begin to run until February 2017, when his family learned that Rehbock

had retired.  (Brief (Doc. No. 115 at pp. 1–8) at p. 5.)

In response, the Government argues that the limitations period

begins to run under § 2255(f)(4) on the date on which the facts supporting

the claim or claims presented could have been discovered through the

exercise of due diligence, not the date on which the facts were actually

discovered.  (Response (Doc. No. 118) at 3.)  The Government

acknowledges that "egregious misconduct" on the part of defense counsel

can toll the one-year limitations period, but only if the petitioner can

establish that he acted with reasonable diligence in attempting to file his

federal habeas petition during the period that he seeks to toll.  (*Id.*)  The

Government implies that Marciante's description of his own actions

establish a lack of due diligence and cites to several district court opinions

finding a lack of due diligence under similar circumstances.  (*Id.*)  In reply,

Marciante argues that the acted reasonably in light of the advice he had

received from his attorney's office and his fellow inmates and that the

Court should hold an evidentiary hearing.  (Marciante's Traverse (Doc. No.

119).)

6

<u>The Motion to Amend</u>

On September 21, 2020, the Court received a submission entitled

"Affirmation in Support of Motion to Amend" from Jodi Morales, who,

despite never having filed a notice of appearance, purports to be "the

attorney for petitioner." (Morales Aff. (Doc. No. 125) at ¶ 1.) In that

affirmation, Morales requests permission to amend the Motion to argue

that the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591

(2015); *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018); and *United States v. Davis*,

139 S. Ct. 2319 (2019), rendered Marciante's guilty plea constitutionally

infirm. The attorney speculates that Marciante pleaded guilty to avoid the

possibility of being convicted on Counts Three and Four, the latter of which

carried a minimum sentence of 15 years and a maximum of life

imprisonment. The Morales Affirmation implies that *Davis* and *Johnson*

rendered the entirety of the statutes that Marciante was accused of violating

in Counts Three and Four void for vagueness, and asserts that Marciante

would not have pleaded guilty had he known the counts would be voided.

The Morales Affirmation concedes that *Davis* was decided on June 24,

2019—almost 15 months the motion to amend was filed—but argues that

the proposed ground for § 2255 relief is nonetheless timely because

Marciante "did not become aware of that ruling or 'the facts supporting' the

7

*Davis* claim until he consulted an attorney in August 2020." (Morales Aff.

at ¶ 5.)[1]

## DISCUSSION

"A motion by a federal prisoner for postconviction relief under 28 U.S.C.

§ 2255 is subject to a one-year time limitation ...." *Clay v. United States*, 537

U.S. 522, 524 (2003); *see* 28 U.S.C. § 2255(f). The limitation period runs from

the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[1] The Morales Affirmation also contains a sur-reply, setting forth a new argument for holding that Marciante's Motion was timely. It asserts that "[n]othing in the record reflects that this Court, after imposing sentence, ever apprised petitioner of his right to appeal," (*id.* at ¶ 6), then argues that this somehow constituted a government-created "impediment" to making the Motion within the meaning of 28 U.S.C. § 2255(f)(2), and that both the Motion and the motion to amend are not time-barred because that impediment has not been removed. However, this sur-reply is not only unauthorized, but completely disregards that portion of Marciante's sworn affidavit which states that the Court *did* inform him of his right to appeal. (*See* Marciante Aff. at ¶ 3.) Accordingly, the Court need not discuss it further.

8

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The one-year limitation period "generally runs from 'the date on which the judgment of conviction becomes final.'" *Clay*, 537 U.S. at 524. If the filing deadline were calculated pursuant to § 2255(f)(1), Marciante's motion would be untimely. "[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005). Federal Rule of Appellate Procedure 4(b)(1)(A)(i) requires that the notice of appeal in a criminal case be filed within fourteen days of entry of judgment, so Marciante's judgment became final on August 26, 2011—14 days after his judgment of conviction was entered. *See Superville v. United States*, 771 F. App'x 28, 31 (2d Cir. 2019) (summary order) (holding that because petitioner did not appeal, judgment of conviction became fourteen days after it was entered). Since Marciante's petition was not filed until May 7, 2017, it would be untimely unless Marciante can establish that § 2255(f)(2), (3), or (4) is applicable to his

case or establish a ground for equitable tolling of the limitation period.

In his Motion, Marciante argues that § 2255(f)(4) applies and that he did not discover his attorney's failure to file the notice of appeal until February 2017, when his family informed him that Rehbock had retired.  However, the date on which Marciante actually learned of the alleged ineffective assistance of counsel is not the date on which the one-year limitation period starts to run under § 2255(f)(4).  "Where a petitioner relies on newly discovered evidence, the statute of limitations period runs 'when the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence … regardless of whether petitioner actually discovers the relevant facts at a later date.'"  *Matera v. United States*, 83 F. Supp. 3d 536, 546 (S.D.N.Y. 2015)  (quoting *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000)).  Thus, the "proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed." *Wims*, 225 F.3d at 190.  A petition has one year after that date in which to file his § 2255 motion.  *See id.*

10

"The statute does not require the maximum feasible diligence, only due, or reasonable diligence." *Id.* at 190, n. 4. Accordingly, the Second Circuit has held that a petitioner is not required "to check up on his counsel's pursuit of an appeal … the very day on which [petitioner's] conviction becomes final absent appeal," (*id.*), and "that a five-month delay beyond the date a conviction became final was not 'clearly unreasonable.'" *Matos v. Superintendent, Washington Corr. Facility*, No. 13-CV-2326 (ERK) (CLP), 2014 WL 5587518, at *2 (E.D.N.Y. Nov. 3, 2014) (quoting *Wims*, 225 F.3d at 190–91). However, district courts in this circuit have held delays of several years in discovering an attorney's failure to file a notice of appeal to be unreasonable. *See Gonzalez-Ramos v. United States*, No. 05 Civ. 3974 (LAP), 2007 WL 1288634, at *10 (S.D.N.Y. May 2, 2007) ("A diligent person in Petitioner's circumstances would not have required two years in addition to the one year provided under the statute of limitations to execute the simple task of obtaining and checking a docket sheet."); *Gonzalez v. United States*, 02 Civ. 2733, 2002 WL 31512728 at *4 (S.D.N.Y. Nov. 8, 2002) ("a 46-month delay" does not comport with a "reasonable concept of due diligence" even accounting for "a petitioner's *pro se* status and the realities of prison

11

life"); *Tineo v. United States*, No. 01 Civ. 4511 (HB), 97 Cr. 313 (HB), 2002 WL 1997901 at *2 (S.D.N.Y. Aug. 29, 2002) ("A duly diligent person in Tineo's shoes would not have needed more than three years to discover the alleged ineffectiveness of counsel, including whether his attorney had failed to file a direct appeal."); *Zapata v. United States*, Nos. 90 Cr. 943, 99 Civ. 85, 2000 WL 1610801 at *3 (S.D.N.Y. Oct. 27, 2000) ("a duly diligent person" does not require "three and a half years … to discover that counsel had not filed a notice of appeal").

In order for the Court to conclude that Marciante's Motion was timely under § 2255(f)(4), it would have to find that Marciante, despite exercising due diligence, could not have discovered Rehbock's failure to file the notice of appeal during the 56-month period between August 26, 2011, when his conviction became final, and May 7, 2016, one year before he filed his Motion. Such a finding would not only be inconsistent with the case law in this circuit, but impossible to justify under the circumstances of this case. Marciante was not young or inexperienced with the criminal justice system; at the time of his conviction, he was middle-aged and had at least three prior felony convictions. Through this experience, he had learned

12

enough about the legal process to ask his attorney to raise a

relatively sophisticated issue regarding the guidelines calculations

and to explain that issue articulately in his *pro se* Motion.  Even

assuming Marciante was not knowledgeable the appellate process,

he would have known whether an appellate brief had been prepared

because he or his family would have had to pay retained counsel to

prepare it and likely would have received a copy of it.

     Moreover, although incarcerated, Marciante was not unable to

investigate the delay.  His affidavit implies that he called Rehbock's

office several times and spoke to the staff.  Although he was unable

to speak with Rehbock, he could have asked when the appellate brief

had been filed and to receive a copy of it.  Alternatively, he could

have asked his family, who ultimately informed him that Rehbock

had retired, to visit the office and inquire further.  However,

Marciante was allegedly satisfied by the office staff's repeated

assertions that he would receive a ruling in the mail when the appeal

was adjudicated.  Even assuming Marciante's allegations are entirely

true, they do not establish due diligence on the part of Marciante.

     In light of this lack of due diligence, there is also no basis for

equitably tolling the one-year limitation period.  In addressing the

circumstances in which a federal habeas petitioner can invoke the
doctrine of equitable tolling to overcome a statute of limitations, the
Supreme Court has held that "a petitioner is entitled to equitable
tolling only if he shows (1) that he has been pursuing his rights
diligently, and (2) that some extraordinary circumstance stood in his
way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631,
649 (2010) (internal quotations and citations omitted). A petitioner is
not pursuing his rights diligently if he waits "nearly six years to seek
federal postconviction relief." *See McQuiggin v. Perkins*, 569 U.S. 383,
391 (2013).

The Motion to Amend

   "A motion for leave to amend a pending Section 2255 petition
is evaluated under the liberal pleading standard of Federal Rule
Civil Procedure 15(a), by which '[t]he court should freely give leave
when justice so requires.'" *Francis v. United States*, No. 06 CR 80
(NRB), 2016 WL 2865422, at *7, n. 9 (S.D.N.Y. May 13, 2016) (citing
*Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002) (applying Fed.
R. Civ. P. 15 to motion to amend a § 2255 petition)). "Leave to
amend may, however, properly be denied if the amendment would
be futile …." *Pierce v. United States*, No. 05-CR-322(13), 2018 WL

14

10070505, at *43 (N.D.N.Y. Mar. 27, 2018) (citing *Anderson News.*

*L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)).

In this case, it would be futile to grant leave to amend. First,

the claim that *Davis* invalidated Count Three is incorrect and the

claim that *Johnson* invalidated Count Four has not been established.

Second, this argument is time-barred.

A. The Merits of the Proposed Ground

Before addressing the merits of the proposed argument, the

Court must first briefly discuss the three cases cited in the Morales

Affirmation: *Johnson*, *Dimaya*, and *Davis*. *Johnson* involved the direct

appeal of a person who pleaded guilty to being an armed career

criminal in possession of a firearm. Under the Armed Career

Criminal Act of 1984 ("ACCA"), a defendant convicted of being a

felon in possession of a firearm in violation of 18 U.S.C. § 922(g)

faces a mandatory minimum sentence of 15 years' imprisonment and

a maximum of life imprisonment if he has three or more previous

convictions for a "violent felony." 18 U.S.C. § 924(e)(1). The statute

defines the term "violent felony" to mean:

> any crime punishable by imprisonment for a term exceeding
> one year, or any act of juvenile delinquency involving the use

15

or carrying of a firearm, knife, or destructive device that
would be punishable by imprisonment for such term if
committed by an adult, that —

    (i) has as an element the use, attempted use, or
threatened use of physical force against the person of another;
or

    (ii) is burglary, arson, or extortion, involves use of
explosives, or otherwise involves conduct that presents a
serious potential risk of physical injury to another ….

18 U.S.C. § 924(e)(2)(B). The district court held that Johnson's prior

convictions involved "conduct that presents a serious potential risk

of physical injury to another" under § 924(e)(2)(B)(ii) and sentenced

him to 15 years' imprisonment.

On appeal, Johnson argued that this portion of §

924(e)(2)(B)(ii) — the ACCA residual clause — was unconstitutionally

vague. The Supreme Court agreed with Johnson. First, the Court

held that the clause left "grave uncertainty about how to estimate the

risk posed by a crime." *Johnson*, 576 U.S. at 597. Second, the Court

held that the clause left "uncertainty about how much risk it takes

for a crime to qualify as a violent felony." *Id.* at 598.

Using the rationale in *Johnson*, the Supreme Court

subsequently struck down similarly worded residual clauses in

16

*Dimaya* and *Davis*.  Although those cases involved two separate statutory definitions of "crimes of violence" — 18 U.S.C. § 16 in *Dimaya* and 18 U.S.C. § 924(c)(3) in *Davis* — the statutory definitions were identical.  Both definitions consisted of two separate clauses: an elements clause which defined "crime of violence" to mean "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. §§ 16(a) and 924(c)(3)(A), and a residual clause which defined "crime of violence" to mean "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. §§ 16(b) and 924(c)(3)(B). *Dimaya* and *Davis* invalidated only the residual clauses; the elements clauses were not held to be unconstitutional.

The argument which the Morales Affirmation proposes raising assumes that the third and fourth counts against Marciante would have to be dismissed in light of *Johnson* and *Davis*.  Then, relying on cases in which a defendant pleaded guilty in reliance on misrepresentations or his misunderstanding of the charges against him, the Morales Affirmation argues that Marciante did not plead

17

guilty knowingly and voluntarily because he did not understand his potential exposure. This argument is both factually and legally flawed.

First, the third count was not invalidated by *Davis*. That count charged Marciante with using and carrying a firearm "during and in relation to one or more crimes of violence, to wit: the crimes charged in Counts One and Two …." (Indictment (Doc. No. 1) at 2.) Count Two charged a substantive Hobbs Act robbery, which is a crime of violence under the elements clause of § 924(c)(3)(A). *See United States v. Hill*, 890 F.3d 51, 53 (2d Cir. 2018). Thus, Count Three named both conspiracy and substantive Hobbs Act robbery as the predicate crimes of violence and was not invalidated by *Davis*. *See United States v. Walker*, 789 F. App'x 241, 244–45 (2d Cir. 2019) (summary order) (holding that § 924(c) convictions were not invalidated by *Davis* because the predicate crimes of violence were conspiracy *and* substantive Hobbs Act robbery.)

Second, it is unclear whether the fourth count was invalidated by *Johnson*. That count charged Marciante with being an armed career criminal in possession of a firearm, but it did not specify the three predicate "violent felonies." Accordingly, it is unclear whether

18

the residual clause of the ACCA was implicated.  The Marciante Affirmation does not establish that the three predicate offenses were not "violent felonies" under the elements clause (that is, 18 U.S.C. § 924(e)(2)(B)(i)) and/or among the offenses enumerated in 18 U.S.C. § 924(e)(2)(B)(ii).

Third, even assuming that *Johnson* invalidated the fourth count, the Morales Affirmation does not establish that this would serve as a basis for vacating Marciante's conviction.  This was not a case in which Marciante misapprehended his potential exposure because of misrepresentations or his own misunderstanding.  Even if Marciante pleaded guilty because he feared he would be sentenced to life imprisonment—an assumption which is unsupported by any facts set forth in the Morales Affirmation—that fear was well-founded at the time he pleaded guilty, more than four years before *Johnson* was decided.

B.  The Proposed Argument is Time-barred

The Morales Affirmation asserts that the proposed argument is timely under 28 U.S.C. §2255(f)(3).  That subsection permits a petitioner to bring a claim to vindicate a right within one year of "the date on which the right asserted was initially recognized by the

19

Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Even assuming that *Johnson* and *Davis* both recognized rights which were made retroactively applicable, Marciante's motion to amend would be untimely under this subsection. *Johnson* was decided on June 26, 2015—more than five years before the motion to amend was filed. And *Davis* was decided on June 24, 2019—almost 15 months before the motion to amend.

The Morales Affirmation acknowledges that *Davis* was decided on June 24, 2019, but argues that the motion to amend is nonetheless timely because Marciante "did not become aware of that ruling or 'the facts supporting' the *Davis* claim until he consulted an attorney in August 2020." (Morales Aff. at ¶ 5.) This argument is meritless because the one-year period of limitation does not begin to run when a petitioner actually learns of the Supreme Court's decision and realizes its relevance to his case. Rather, "a prisoner [is] charged with knowledge of facts contained in published legal opinions (and, accordingly, the limitations period began to run) on the date those opinions became available in the prison library …." *Wims*, 225 F.3d at 190 (citing *Easterwood v. Champion*, 213 F.3d 1321,

20

1323 (10th Cir. 2000)).  Marciante offers no evidence that the *Davis* opinion was not available in the prison library by September 20, 2019.

Moreover, as discussed above, the argument proposed in the Morales Affirmation is actually based on *Johnson*, not *Davis*.  *Johnson* may have provided a legal basis for dismissing the fourth count of the indictment—the count which exposed Marciante to the possibility of life imprisonment.  *Davis*, in contrast, did not provide a basis for dismissing any of the counts.  It is beyond dispute that the *Johnson* opinion would have been available in the prison library by September 20, 2019—more than 50 months after it was issued.

## CONCLUSION

For the reasons stated above, Marciante's motion to vacate his conviction pursuant to 28 U.S.C. § 2255 and his motion to amend the petition are both denied.  Because Marciante has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Clerk of Court is respectfully directed to enter judgment against Marciante and in favor of the United States in Case No. 17-CV-2945 (SJ), and to mail a copy of the judgment and this Memorandum and

21

Order to Marciante at FCI Schuylkill, P.O. Box 759, Minersville, PA

17954, where he is currently incarcerated.

**SO ORDERED.**

Dated: March 6 , 2022

Brooklyn, New York

Sterling Johnson, Jr., U.S.D.J.

P-049